737 N.W.2d 835 (2007)
MICHIGAN STATE EMPLOYEES ASSOCIATION, Richard Reid and Ted Wolfgang, Plaintiffs-Appellees/Cross-Appellants,
v.
DEPARTMENT OF CORRECTIONS and Department of Labor and Economic Growth, Defendants-Appellants/Cross-Appellees.
Docket No. 273556.
Court of Appeals of Michigan.
Submitted May 1, 2007, at Lansing.
Decided May 10, 2007, at 9:05 a.m.
Released for Publication August 29, 2007.
*836 Fraser Trebilcock Davis & Dunlap, P.C. (by Brandon W. Zuk), Lansing, for the plaintiffs.
Michael A. Cox, Attorney General, Thomas L. Casey, Solicitor General, and Richard P. Gartner and Thomas A Kulick, Assistant Attorneys General, for the defendants.
Before: MARKEY, P.J., and SAWYER and BANDSTRA, JJ.
SAWYER, J.
The question presented in this appeal is whether licensed master plumbers and licensed master electricians who are employed by a non-contractor employer to perform the duties of a supervising licensed master plumber or electrician to oversee plumbing or electrical work performed for that employer and to obtain permits may also hold a plumbing or electrical contractor's license to maintain a plumbing or electrical business outside his or her employment. We hold that there is no statutory prohibition against this and that the Department of Labor and Economic Growth (DLEG) lacks the authority to create such a restriction by administrative rule.
At issue in this appeal is whether certain licensed master plumbers and electricians employed by the Department of Corrections (DOC) may also hold plumbing or electrical contractors' licenses. Apparently, a number of the plumbers and electricians employed by the state also hold contractor's licenses and maintain a part-time business on the side. The plumbers and electricians at issue are those who are authorized to obtain the necessary permits on behalf of the DOC and oversee the plumbing or electrical work performed by other DOC employees.[1] DLEG, which oversees the licensing of both plumbers and electricians, takes the position that those licensed master plumbers and electricians who serve as supervising master plumbers or electricians for the DOC cannot also be the supervising master plumber or electrician for their own contracting business. That is, those plumbers and electricians would only be allowed to also possess a plumbing or electrical contractor's license if they employed another licensed master plumber or electrician to serve as the supervising licensed master for their contracting business. On cross-motions for summary disposition, the trial court ruled in favor of DLEG with respect to the plumbers, but against DLEG with respect to the electricians.
*837 Beginning in late 2003, those plumbers and electricians employed by the DOC as supervising licensed masters were informed that they would be required to sign DLEG's "factory affidavit" form. The form for electrician states:
I am employed as a full-time licensed electrician by the company listed above. I do not represent any other person or company as a supervising master electrician and I will promptly notify the Department [of Labor and Economic Growth] of any changes in this written affidavit.
The "factory affidavit" for plumbers is similar:
I am presently employed as a full-time licensed plumber by the company listed above. I do not represent any other person or company as a supervising master plumber and I will promptly notify the Department of any changes in this written affidavit.
With respect to plumbers, defendants point to MCL 338.3551(3) for authority to require the factory affidavit of supervising licensed master plumbers and their restriction on outside employment. MCL 338.3551(2) and (3) provide as follows:
(2) Except as otherwise provided in subsection (3) and section 15(2), (3), (4), and (5), the state or a governmental subdivision shall issue a plumbing permit only to a licensed plumbing contractor. The state or a governmental subdivision shall require the plumbing contractor to record his or her current plumbing contractor license number on the permit application. A licensed plumbing contractor shall designate 1 or more licensed master plumbers employed full-time who directly supervise the installation of plumbing to obtain permits using the license number of the plumbing contractor. The master plumber's license number must also be recorded on the permit application.
(3) In those instances where business or industrial procedure requires the regular employment of a full-time licensed master plumber, a licensed master plumber shall be authorized to secure permits for installations of plumbing on the premises owned or occupied and used by the business provided the licensed master plumber physically supervises the plumbing work and represents only the business or industrial employer. An annual affidavit furnished by the department shall be signed by both the employer and the licensed master plumber and shall be kept on file in the department. The filing fee for an affidavit shall be determined by the department. A new affidavit must be filed before permits will be issued if the licensed master plumber's employment is terminated. The affidavit shall contain the following:
(a) The name and business address of the person employing the licensed master plumber.
(b) The name, address, and license number of the licensed master plumber.
(c) A statement to the effect that the employer and licensed master plumber will comply with the provisions of the act regulating installation of plumbing in this state. [Emphasis added.]
Defendants conclude from the highlighted text that a licensed master plumber who is authorized by his employer to obtain permits on behalf of the employer may not hold a contractor's license and obtain permits on behalf of anyone else. The trial court agreed with this interpretation, and plaintiffs concede on appeal that that interpretation is correct. We, however, disagree.
Issues of statutory construction are reviewed de novo, as are grants of summary *838 disposition.[2] We must ascertain the legislative intent that may be reasonably inferred from the language used in the statute.[3] Where the language of a statute is clear and unambiguous, judicial construction is neither required nor permitted.[4] While the statutory phrase "represents only the business or industrial employer," when taken out of context[,] may suggest a requirement that the supervising licensed master plumber may only work for the employer who authorizes him or her to obtain permits on behalf of any employer, when read in context, creates no such restriction.
MCL 338.3551(2) provides that a plumbing permit may only be issued to a licensed plumbing contractor. Subsection 3 of that statute creates an exception to this rule: Where an entity employs on a full-time basis a licensed master plumber, that licensed master plumber is authorized to secure permits on behalf of his or her employer for locations the employer owns or occupies. We do not share defendants' interpretation that a person who fills this role is prevented from working for anyone else. Rather, we think that the clear and unambiguous language of the statute means that the designation of a licensed master plumber under subsection 3 only authorizes him or her to obtain permits for the employer who makes the designation under subsection 3. That is, a master licensed plumber who does not hold a contractor's license, but is designated by his or her full-time employer under subsection 3, may obtain permits and supervise work for that employer. However, that is the limit of his or her authority under subsection 3.
Licensed master plumbers who do hold contractor licenses do not draw their authority to obtain permits and supervise work from subsection 3. They draw it from subsection 2. Indeed, an important, overlooked issue is this: Why must any employee (of the DOC or any other entity) who holds a contractor's license need to be designated under subsection 3 at all? For example, in this case, plaintiff Ted Wolfgang, in addition to being employed by the DOC, is a licensed master plumber and a licensed plumbing contractor. Therefore, he may be issued a plumbing permit under subsection 2 without regard to whether he is designated by the DOC under subsection 3 to obtain plumbing permits on its behalf.
Furthermore, MCL 338.3531(2) establishes the standards for the issuance of a plumbing contractor's license:
The department shall issue a plumbing contractor's license to a person who does all of the following:
(a) Files a completed application on a form provided by the department that includes the following information:
(i) A statement listing the complete address of each place where the applicant has resided and has been engaged in business during the last 5 years including the length of residences and types of businesses engaged in or employments.
(ii) The name of the applicant, the name of the business, and the location of the place for which the license is desired.
(iii) The name of the business owner or president of the corporation and the name of the applicant, if different from the name of the business owner or president, and his or her title.

*839 (iv) The name, residence address, and license number of the licensed master plumber who represents the person.
(b) Pays the examination fee prescribed in section 31 and passes an examination provided for by the board and the department.
(c) Pays the license fee prescribed in section 31.
Nothing in these conditions precludes a plumbing contractor from working for someone else as a licensed plumber, or requires that he or she agree not to obtain permits on behalf of that employer. Moreover, the statute contains mandatory language: the department shall issue a contractor's license to a person who meets the qualifications listed in the statute. Because the department is obligated by law to issue a contractor's license to a person who meets the statutory requirements, it necessarily follows that it cannot create additional requirements for a license. In this case, the department is creating additional requirements by requiring Mr. Wolfgang to forgo his position as a supervising master plumber for the DOC in order to retain his contractor's license.
In sum, MCL 338.3551(3) does not impose a restriction on licensed master plumbers who are designated to obtain permits and supervise work. Rather, it allows a situation where a licensed master plumber who is not a plumbing contractor may nevertheless obtain a permit on behalf of an employer and supervise work done for that employer. Nothing in that section restricts a licensed master plumber who is employed by an entity other than a plumbing contractor from also holding a plumbing contractor's license.
We next turn to the issue of licensed electricians. This issue is even more straightforward because there does not appear to be any statutory equivalent under the Electrical Administrative Act that corresponds to MCL 338.3551. In fact, we are unable to find any statutory provision that would authorize the DOC (or any other entity that is not an electrical contractor) to merely employ a licensed master electrician who does not hold an electrical contractor's license to do work for that employer. Rather, that authority, along with the argument that such a designated master electrician cannot hold a contractor's license, arises from an administrative rule promulgated by DLEG. Specifically, Rule 338.1039a provides as follows:
(1) If business or industrial procedure requires the regular employment of a person who is licensed pursuant to the provisions of the act, a person, firm, or corporation may employ a licensed master electrician to actively supervise the installation of electrical equipment on the premises owned and occupied by the person, firm, or corporation. The master shall secure all necessary permits. An affidavit form that is furnished by the board shall be signed by both the employer and the licensed master electrician and shall contain all of the following information:
(a) The name and business address of the person who employs the licensed master electrician.
(b) The name, address, and current license number of the licensed master electrician.
(c) The license number and name of the licensing authority.
(d) A statement to the effect that the employer and the licensed master electrician are responsible for exercising the supervision and control of the electrical operations necessary to secure full compliance with the act, these rules, and all other laws and rules related to the installation of electrical equipment in this state.

*840 (2) A licensed master electrician shall not represent more than 1 person, firm, or corporation as the licensee in a business or industrial setting through an affidavit that is signed by the employer and the licensee.
(3) A licensed master electrician who is employed in a business or industrial setting and his or her employer shall notify the board immediately of any changes in the written affidavit that is signed between the employer and the licensee.
(4) The affidavit becomes invalid 30 days after the designated licensed master electrician ceases to be an employee of the person, firm, or corporation.
[Mich.Admin. Code, R. 338.1039a.]
This rule does purport to establish the authority of a licensed master electrician who does not have an electrical contractor's license to supervise work and obtain permits on behalf of an employer. But this rule appears to contradict a statutory provision of the Electrical Administrative Act.
MCL 338.887(1) prohibits anyone who does not hold an electrical contractor's license from engaging in the business of electrical contracting. Subsection 2 of that statute provides that no person shall undertake to execute any electrical wiring unless licensed under the act and working under the direction of the holder of an electrical contractor's license. Subsection 3 then creates exceptions to subsection 2:
A license under this act is not required in the execution of the following classes of work:
(a) Minor repair work, as defined in section 1.
(b) The installation, alteration, repairing, rebuilding, or remodeling of elevators, dumbwaiters, escalators, or man lifts performed under a permit issued by an elevator inspection agency of the state of Michigan or political subdivision of the state of Michigan.
(c) The installation, alteration, or repair of electrical equipment and its associated wiring installed on the premises of consumers or subscribers by or for electrical energy supply or communication agencies for use by such agencies in the generation, transmission, distribution, or metering of electrical energy or for the operation of signals or transmission of intelligence.
(d) The installation, alteration, or repair of electric wiring for the generation and primary distribution of electric current, or the secondary distribution system up to and including the meters, where such work is an integral part of the system owned and operated by an electric light and power utility in rendering its duly authorized service.
(e) Any work involved in the manufacture of electric equipment, including the testing and repairing of such manufactured equipment.
(f) The installation, alteration, or repair of equipment and its associated wiring for the generation or distribution of electric energy for the operation of signals or transmission of intelligence where such work is in connection with a communication system owned or operated by a telephone or telegraph company in rendering its authorized service as a telephone or telegraph company.
(g) Any installation, alteration, or repair of electrical equipment by a homeowner in a single family home and accompanying outbuildings owned and occupied or to be occupied by the person performing the installation, alteration, or repair of electrical equipment.
(h) Any work involved in the use, maintenance, operation, dismantling, or reassembling of motion picture and theatrical *841 equipment used in any building with approved facilities for entertainment or educational use and which has the necessary permanent wiring and floor and wall receptacle outlets designed for the proper and safe use of such theatrical equipment, but not including any permanent wiring.
(i) Work performed by mechanical contractors licensed in classifications listed in section 6(3)(a), (b), (d), (e), and (f) of the Forbes mechanical contractors act, 1984 P.A. 192, MCL 338.976, plumbing contractors licensed under 1929 P.A. 266, MCL 338.901 to 338.917, and employees of persons licensed under those acts while performing maintenance, service, repair, replacement, alteration, modification, reconstruction, or upgrading of control wiring circuits and electrical component parts within existing mechanical systems defined in the mechanical and plumbing codes provided for in the Stille-DeRossett-Hale single state construction code act, 1972 P.A. 230, MCL 125.1501 to 125.1531, including, but not limited to, energy management systems, relays and controls on boilers, water heaters, furnaces, air conditioning compressors and condensers, fan controls, thermostats and sensors, and all interconnecting wiring associated with the mechanical systems in buildings which are on the load side of the unit disconnect, which is located on or immediately adjacent to the equipment, except for life safety systems wiring.
(j) Electrical wiring associated with the installation, removal, alteration, or repair of a water well pump on a single family dwelling to the first point of attachment in the house from the well, by a registered pump installer under part 127 of the public health code, 1978 P.A. 368, MCL 333.12701 to 333.12771.
(k) The installation, maintenance, or servicing of burglar alarm systems within a building or structure.
(l) The installation, maintenance, or servicing of listed residential and commercial lawn irrigation equipment, except any permanent wired connections exceeding 30 volts.
(m) The installation, maintenance, or servicing of listed landscape lighting systems and equipment, except any permanent wired connections exceeding 30 volts.
(n) The installation, alteration, maintenance, or repair of electric signs and related wiring by an unlicensed individual under the direct supervision of a licensed sign specialist except that the ratio of unlicensed individuals engaged in this activity shall not exceed 2 unlicensed individuals to 1 licensed sign specialist. An enforcing agency shall enforce this ratio on a jobsite basis.
(o) The construction, installation, maintenance, repair, and renovation of telecommunications equipment and related systems by a person, firm, or corporation primarily engaged in the telecommunications and related information systems industry. This exemption does not include the construction, installation, maintenance, repair, and renovation of a fire alarm system.
Therefore, any licensed electrician whom the DOC employs may only perform the above work for the DOC if that employee also holds an electrical contractor's license. Furthermore, we were unable to find any provision in the Electrical Administrative Act granting DLEG the authority to grant further exceptions to the requirement of MCL 338.887(2) that electrical work be performed under the direction of a licensed electrical contractor.
The validity of an administrative rule is gauged by the three-part test set *842 forth in Dykstra v. Dep't of Natural Resources:[5] "(1) whether the rule is within the subject matter of the enabling statute; (2) whether it complies with the legislative intent underlying the enabling statute; and (3) whether it is arbitrary or capricious." In the case at bar, the Legislature clearly set out the conditions under which electrical work must be performed under the direction of a licensed electrical contractor. There is no language in the statute that grants authority to the electrical administrative board or DLEG to grant exceptions not found in the statute. Statutes that grant power to administrative agencies are strictly construed and the authority granted the administrative agency must be plainly granted.[6] No such plain grant of power exists here. Accordingly, we conclude that any rule setting out exceptions to the statutory requirement that electrical work must be performed under the direction of a licensed electrical contractor fails the second prong of the Dykstra test.
Furthermore, even if DLEG possesses the authority to create by rule a provision that allows a licensed master electrician to supervise work and obtain permits on behalf of an employer even though the electrician does not hold a contractor's license, nothing in the statute grants DLEG the authority to prohibit a person holding an electrical contractor's license from being so designated by an employer. Rather, defendants rely on Rule 338.1039a(2) to establish such a restriction. But this rule is problematic in a number of respects.
First, we are not convinced that it stands for the proposition that defendants claim that it does. Defendants claim that subsection 2 prohibits a licensed master electrician from representing more than one entity as the supervising licensed master electrician. Therefore, defendants argue, an employee of the DOC who is designated under the above rule as a supervising licensed master electrician cannot also hold an electrical contractor's license (unless he or she has employed a full-time licensed master electrician who can supervise the contractor's work and obtain permits). But the clear and unambiguous language of subsection 2 only provides that a licensed master electrician who does not have a contractor's license may be designated as the supervising licensed master electrician under the rule by only one employer.
Second, as with the case of plumbers, the statute contains mandatory language regarding when the department shall issue an electrical contractor's license, and that language contains no restrictions regarding work as a supervising licensed master electrician for another employer. MCL 338.883b(1) provides as follows:
The department of labor shall issue an electrical contractor's license to a person who does all of the following:
(a) Holds a master electrician's license or has not less than 1 master electrician residing in this state who is in his or her full-time employ. That master electrician shall be actively in charge of and responsible for code compliance of all installations of electrical wiring and equipment.
(b) Files a completed application on a form provided by the department of labor.
(c) Pays the examination fee and passes an examination provided for by the board and the department of labor.

*843 (d) Pays the license fee prescribed in section 3.
Like in the case of the plumbers, we read the above statute as setting the only conditions on the obtaining of an electrical contractor's license and DLEG lacks the authority to create extra-statutory requirements, such as an agreement not to be the supervising licensed master electrician for another entity.
Third, again as discussed with respect to plumbers, we fail to see how an electrician who holds an electrical contractor's license but also works for a non-electrical contractor employer would need to be designated under the rule in order to obtain electrical permits. The electrician could do so under the authority of his or her contractor's license. For that matter, it is less than clear that the Electrical Administrative Act limits who may obtain the electrical permit. While MCL 338.3551(2) clearly limits the issuance of plumbing permits to a plumbing contractor, or the designated supervising licensed master plumber on behalf of his or her employer, there is no such clear directive under the Electrical Administrative Act. At best, a negative inference can be drawn from MCL 338.885(1) that where electrical work is being performed on behalf of a charitable organization without compensation, the property owner may obtain the electrical permit. That could perhaps be read as implying that in all other cases, the electrical contractor must perform the work.
Defendants argue that the rule that one cannot be both a licensed electrical contractor and a supervising licensed master electrician for an employer is necessary. Specifically, they argue that it would be impossible to confirm that the licensed master electrician would provide the required supervision for work done for both the employer and his or her own contracting business. If this concern were real, the rule would be that an electrical contractor cannot have more than one customer at a time because it would be impossible for him or her to supervise two job sites. This, of course, is nonsense. While it is true that one person cannot supervise work at two locations at the same time, that merely means that work cannot be going on at two locations at the same time (unless, of course, the electrical contracting business has full-time master electricians in its employ who are designated as able to supervise work and obtain permits). That is, a DOC employee who is a supervising licensed master electrician who also is a licensed electrical contractor would only be able to perform work for his or her contracting business when not on the job for the DOC. But ensuring that this requirement is met is no different from ensuring that an electrical contractor with multiple customers is providing the required supervision on each job site by a licensed master electrician and that at any given time there are not more active job sites than master electricians available to supervise those sites. In essence, the DOC is one of the contractor's customers and creates no additional burdens on DLEG to ensure compliance with the supervision rules than is the case with any other contractor that has multiple customers. Finally, we would note that even if there is a rational reason for the rule, it is for the Legislature, not this Court, to add it to the statute.
In any event, in light of the clear and unambiguous language of the Electrical Administrative Act, we conclude (1) that DLEG lacks the statutory authority to authorize anyone other than a licensed electrician working under the direction of an electrical contractor to perform electrical wiring, subject to specific exceptions contained in the statute, and (2) that DLEG lacks the statutory authority to prohibit the holder of an electrical contractor's license from working for a non-electrical *844 contractor and supervise work and obtain permits for work done on behalf of that employer.
In sum, we hold that neither MCL 338.3551 nor Mich. Admin. Code, R. 338.1039a actually prohibits a licensed master plumber or a licensed master electrician from both holding a contractor's license and being the supervising master for a non-contractor employer. Further, we hold that DLEG and the boards that oversee the licensing of plumbers and electricians lack the authority to create such a restriction by administrative rule. We additionally hold that where an employee of a non-contractor employer is himself or herself a licensed plumbing contractor, there is no need for the employer to designate him or her as a supervising licensed master plumber under MCL 338.3551(3). Similarly, no such need exists with respect to electricians and, in fact, it does not appear that DLEG possesses the authority to create by administrative rule circumstances not provided for by statute in which electricians may be supervised by a licensed master electrician who does not hold a contractor's license.
In light of our resolution of the statutory and administrative rule issues in this case, we need not address the issue raised on cross-appeal regarding the constitutionality of these rules.
Finally, we wish to point out that this opinion only concerns the authority of DLEG to impose these restrictions through its licensing and oversight authority. Nothing in this opinion should be construed as restricting the authority of the employer, in this case the DOC, from imposing its own restrictions on outside work by its employees. Whether the DOC, or any other employer, may restrict its own employees from obtaining a contractor's license and doing such work outside his or her employment is not an issue presented in this case and we do not address it. We only hold that the State Plumbing Act and the Electrical Administrative Act do not impose such a restriction and that DLEG lacks the authority to impose it by administrative rule.
Affirmed in part, reversed in part, and remanded to the trial court with directions to enter judgment in favor of plaintiffs consistent with this opinion. We do not retain jurisdiction. Plaintiffs may tax costs.
NOTES
[1] We refer to those individuals in this opinion as "supervising licensed master plumbers" and "supervising licensed master electricians" or simply "supervising licensed masters."
[2] Perry v. Golling Chrysler Plymouth Jeep, Inc., 477 Mich. 62, 729 N.W.2d 500 (2007).
[3] Id.
[4] United States Fidelity Insurance & Guaranty Co. v. Michigan Catastrophic Claims Ass'n, 274 Mich.App. 184, 731 N.W.2d 481 (2007).
[5] 198 Mich.App. 482, 484, 499 N.W.2d 367 (1993).
[6] Lake Isabella Dev., Inc. v. Village of Lake Isabella, 259 Mich.App. 393, 401, 675 N.W.2d 40 (2003).